### In re Phillip S. HENDRY and Vicky L. Hendry, Debtors.

### Bankruptcy No. 94–32341–T.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Oct. 28, 1997.

7. 11 U.S.C. § 1325(a) provides in part:

[T]he court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;

(B) (I) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

James E. Kane, Chaplin, Papa & Gonet, Richmond, VA, for debtor.

Robert E. Hyman, Chapter 13 Trustee, Richmond, VA.

DOUGLAS O. TICE, Bankruptcy Judge.

Hearing was held October 8, 1997, on debtor Vicky L. Hendry's motion to show cause for violation of the automatic stay filed against Reliable Stores, Inc. t/a Morton's Jewelers ("Morton's"). Morton's did not file a response and did not appear at the hearing. At the conclusion of debtor's evidence the court directed the debtor to submit proposed findings of fact and conclusions of law. For the reasons stated in this memorandum opinion, the court will grant debtor's motion.

### Facts

Debtor and her husband filed a petition under Chapter 13 of the bankruptcy code on June 24, 1994. Morton's was scheduled as an unsecured creditor in the amount of $800.00.

Morton's received notice of the filing and filed a Proof of Claim in debtor's bankruptcy case on July 11, 1994, claiming a secured debt of $820.44. Morton's debt is listed in debtor's confirmed, modified plan as a secured debt, but Morton's is being treated as an unsecured creditor since debtor no longer has the collateral.[1]

On September 3, 1997, debtor visited Morton's retail store in Chesterfield Town Center, Chesterfield County, Virginia. At that time, debtor learned of a promotional sale being offered by Morton's. Debtor was given a written proposal by Janet Anderson, assistant manager at Morton's. The proposal provided that debtor could trade in a 1/2 carat diamond cluster ring[2] that she owned at that time as credit toward the purchase of a one carat diamond ring. During debtor's visit, Anderson checked debtor's account records to verify ownership of the 1/2 carat ring.

Two days later on September 5 debtor called Morton's to complete the arrangements for purchase of the one carat ring. At that time the store manager advised debtor that he would arrange for Anderson to have the ring ready for debtor to pick up. Three days later on September 8 debtor called and agreed with Anderson that her daughter would come to Morton's that day to trade in the 1/2 carat ring and pick up the one carat ring.

On September 8 debtor's daughter took the 1/2 carat ring to Morton's and surrendered it to Anderson. Upon receiving the ring, Anderson gave debtor's daughter one of Anderson's business cards. Handwritten on the back of the card is what appears to be an account number, a date of purchase, a purchase price, and a store of purchase. The information apparently pertains to the collateral for the $820.44 debt, see footnote 1, but does not pertain to the 1/2 carat diamond ring which debtor was attempting to trade in. Also handwritten on the back of the card was "Mr. Kluza 1–888–995–6279". The handwriting was already on the card at the time

---

1. The collateral for the $820.44 debt was a sapphire and diamond ring purchased in 1992 at Morton's in Virginia Center Commons Mall. Debtor no longer had the sapphire ring in her possession at any time relevant to this matter.

2. The 1/2 carat diamond cluster ring was not the collateral for the $820.44 debt. The 1/2 carat ring was purchased by debtor and paid in full prior to debtor's chapter 13 filing and was not in any way encumbered by liens.

debtor's daughter handed over the 1/2 carat ring. Anderson advised debtor's daughter that Morton's was keeping the 1/2 carat ring as payment because debtor was in bankruptcy and owed an outstanding debt to Morton's. When debtor's daughter asked for the one carat ring (pursuant to the trade in agreement) or the 1/2 carat ring back, Anderson advised that she could not give her either ring.

Upon learning of these events, debtor's husband, who is also a debtor in this case, called the number handwritten on the back of the card. The speaker who answered at that number would not identify himself but advised debtor's husband that Morton's was keeping the ring as payment for the debt owed to Morton's. Although debtor's husband reminded the speaker of the pending Chapter 13 case, the speaker maintained that Morton's had not received any payments from the trustee and that debtor would not be receiving her ring back.

Debtor's husband also called Anderson who related that she did not think the situation was fair, but her instructions were to repossess the ring.

### Discussion and Conclusions of Law

■■■ Debtor is seeking damages under 11 U.S.C. § 362(h)[3] for Morton's violation of the automatic stay.[4] In order for Morton's to be liable for violating the automatic stay, their actions must have been "willful." *Davis v. IRS*, 136 B.R. 414, 423 (E.D.Va. 1992). A violation of the automatic stay is "willful" if the violator knew of the automatic stay and intentionally or deliberately under-

took acts to violate it. *Id.*; *see also Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292–93 (4th Cir.1986) (affirming award of sanctions under § 362(h) where creditor "knew of the pending [bankruptcy] petition and intentionally attempted to repossess the vehicles in spite of it."). A willful violation does not require specific intent to violate the stay, only knowledge of the stay and an intentional act. *In re. Manuel*, 212 B.R. 517, 519 (Bankr.E.D.Va.1997). Morton's good faith belief of its rights to the property is irrelevant to the willfulness determination. *Id.*

■■■ In this case the evidence shows that Morton's knew debtor had a pending bankruptcy case and as a result, protection of the automatic stay. Morton's received notice of debtor's bankruptcy filing including notice of the effects of the automatic stay.[5] Indeed, Morton's timely filed a proof of claim in debtor's bankruptcy case. In addition, Anderson mentioned the bankruptcy case to debtor's daughter at the time she repossessed the ring. Following the violation, Debtor's husband discussed the bankruptcy case and the trustee payments with both the Morton's representative at the telephone number on the back of the business card *and* Anderson. Even with notice from debtor's husband Morton's has not taken steps to remedy the violation.

The evidence also shows intentional and deliberate action by Morton's to violate the automatic stay. Knowing of the pending bankruptcy, Anderson deliberately took debtor's ring from debtor's daughter and refused

---

**3.** Section 362(h) states:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

**4.** Debtor has also asked the court to find Morton's guilty of civil contempt. However, this finding is not necessary in order to impose sanctions against Morton's. *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 293 (4th Cir. 1986). Therefore, the court will only consider Morton's actions in the context of § 362(h).

**5.** Morton's Jewelers was listed as a creditor in debtor's petition. Each of the listed creditors, including Morton's, was sent a "Notice of Commencement of Case Under Chapter 13 of the

Bankruptcy Code, Meeting of Creditors, and Fixing of Dates." That notice included a provision stating:

CREDITORS MAY NOT TAKE CERTAIN ACTIONS. Under the Bankruptcy Code, the debtor is granted certain protection against creditors. Common examples of prohibited actions by creditors are contacting the debtor to demand repayment, taking action against the debtor to collect money owed to creditors or to *take property of the debtor*, and starting or continuing foreclosure actions, *repossessions*, or wage deductions.... If unauthorized actions are taken by a creditor against a debtor ... the court may punish that creditor. (emphasis added)

to return it or honor the trade in agreement. In addition, the Morton's employee who answered the phone call of debtor's husband told him that the ring was being possessed as payment for the debt owed to Morton's and would not be returned. Anderson also related the same refusal to debtor's husband.

■ These actions constitute a "willful" violation of the automatic stay, and if Morton's cannot show cause for such violation debtor must be awarded compensatory damages [6] under § 362(h). *Davis,* 136 B.R. at 423 n. 20 ("Pursuant to the statutory language of 11 U.S.C. § 362(h) ... an award of actual damages is mandatory upon a finding of a willful violation ... ")

■ Debtor has also requested punitive damages in the amount of twenty-five thousand dollars ($25,000.00). "[A]n award of punitive damages [under § 362(h) ] is discretionary and proper only in appropriate circumstances." *Id* (identifying examples in the case law of conduct warranting the award of punitive damages). Because of the special circumstances needed to award punitive damages, the court will hold an additional evidentiary hearing on the appropriateness of a punitive damages award in this case.

For the reasons stated herein, the court by separate order will grant debtor's motion and schedule a show cause hearing at which the court will also consider the appropriateness of punitive damages.

### ORDER

Hearing was held October 8, 1997 on debtor Vicky L. Hendry's motion to show cause for violation of the automatic stay filed against Reliable Stores, Inc., t/a Morton's Jewelers. Morton's did not file a response and did not appear at the hearing. For the reasons stated by the court in the accompanying memorandum opinion,

IT IS ORDERED that debtor's motion to show cause for violation of the automatic stay is GRANTED.

6. Debtor has claimed compensatory damages totaling $2,886.00 comprised of:
    (1) Attorney's fees $2,250;
    (2) Service of process fees $36; and

IT IS FURTHER ORDERED that a show cause hearing will be held Tuesday, November 18, 1997 at 10:30 a.m. at the United States Bankruptcy Court, United States Courthouse Annex Room 345, 1100 East Main Street, Richmond, Virginia.

IT IS FURTHER ORDERED that Reliable Stores, Inc. t/a Morton's Jewelers is ordered to appear before this court at the November 18, 1997, hearing to show cause why this court should not hold Morton's liable for violations of the automatic stay and award debtor damages under 11 U.S.C. § 362(h).

IT IS FURTHER ORDERED that a hearing on the debtor's request for punitive damages against Morton's is set for Tuesday, November 18, 1997 at 10:30 a.m. at the United States Bankruptcy Court, United States Courthouse Annex Room 345, 1100 East Main Street, Richmond, Virginia, at which time the court will hear evidence on the appropriateness and amount of a punitive damages award in this case.

(3) Value of 1/2 carat diamond ring $600.
Debtor has also asked for return of the 1/2 carat diamond ring.